UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH ZINK,**

**Petitioner,**

**v.**                                                    **Case No. 8:18-cv-2904-MSS-AAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

**Respondent.**

_____/

## O R D E R

Zink petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions in *State v. Zink*, Nos. 2014-CF-2502 and 2014-CF-2605 (Fla. 10th Jud. Cir.). (Docs. 1 at 1 and 2 at 2) After reviewing the petition and memorandum (Docs. 1 and 2), the response, the appendix, and the supplemental appendix (Docs. 15, 16, and 30), and the reply and supplemental reply (Docs. 19 and 31), the Court **DENIES** the petition.

## PROCEDURAL HISTORY

In No. 2014-CF-2502, Zink pleaded guilty to attempted molestation of M.Z., promotion of a sexual performance by M.Z., and six counts of possession of child pornography. (Doc. 16-2 at 204–09) The trial court sentenced Zink to fifteen years in prison for attempted molestation, a concurrent fifteen years for promotion of a sexual performance, a consecutive five years for one count of child pornography possession, and a concurrent five years for all remaining counts, or a total of twenty years in prison. (Doc. 16-2 at 219–34) The state appellate court affirmed the convictions and sentences. (Doc. 16-3 at 34) The

1

post-conviction court denied relief (Doc. 16-3 at 63–64), and the state appellate court affirmed. (Doc. 16-3 at 115)

In No. 2014-CF-2605, a jury found Zink guilty of sexual battery on M.R. (Doc. 16-5 at 32), and the trial court sentenced Zink to life in prison. (Doc. 16-5 at 41–48) The state appellate court affirmed the conviction and sentence. (Doc. 16-7 at 47) The post-conviction court denied relief (Doc. 16-7 at 173–76), and the state appellate court affirmed. *Zink v. State*, 289 So. 3d 882 (Fla. 2d DCA 2020). Zink's federal petition follows.

## FACTS

### No. 2014-CF-2502

A police report provides a factual basis for Zink's guilty plea. The report states that M.Z.'s mother discovered a video of Zink touching and licking the vagina of M.Z., his seven-year-old granddaughter. (Doc. 16-2 at 11) M.Z.'s mother and father contacted police. (Doc. 16-2 at 11) During an interview, M.Z. reported that Zink asked to see her vagina several times and liked to touch and lick her vagina. (Doc. 16-2 at 11) When M.Z.'s father confronted Zink about the sexual abuse, Zink apologized, expressed remorse, and could not explain why he abused M.Z. (Doc. 16-2 at 11) A detective interrogated Zink after advising him his constitutional rights, and Zink admitted to touching M.Z.'s vagina and recording the touching with a digital camera. (Doc. 16-2 at 11) After obtaining a search warrant, police searched Zink's home and discovered child pornography. (Doc. 16-2 at 35)

### No. 2014-CF-2605

The evidence at trial proved the following. M.R.'s mother married Zink, and M.R. considered Zink her father. Zink fathered a son with M.R.'s mother, and M.R. lived with Zink, her mother, and her brother. Beginning when M.R. was seven, Zink performed oral sex

2

on M.R. a few times a week. M.R.'s mother caught Zink abusing M.R. when M.R. was ten or eleven, and M.R.'s mother separated from Zink. M.R.'s mother never reported the abuse to police. After the separation, M.R.'s mother allowed M.R. and her brother to visit Zink. During the visit, Zink performed oral sex on M.R. again. M.R. reported the abuse to police 23 years later. A detective interviewed Zink after advising him of his constitutional rights, and Zink denied engaging in sex with M.R. but admitted that he touched her vagina.

## STANDARDS OF REVIEW

**AEDPA**

Because Zink filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court a full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005);

*Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

**Ground One**

In the only ground in the petition, Zink asserts that the trial court violated his constitutional rights by not suppressing his statements to police ("sub-claim A") and the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) by withholding evidence ("sub-claim B"). (Docs. 1 at 5 and 2 at 1–10)

**No. 2014-CF-2502**

Zink pleaded guilty to the crimes in No. 2014-CF-2502. (Doc. 16-2 at 204–09) "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "[A] guilty plea waives all non-jurisdictional defects occurring prior to the time of the plea . . . ." *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984). *Class v. United States*, 138 S. Ct. 798, 805 (2018) ("A valid guilty plea [ ] renders irrelevant — and thereby prevents the defendant from appealing — the constitutionality of case-related government conduct that takes place before the plea is entered.").

At the change of plea hearing, Zink under oath pleaded guilty and waived his right to a jury trial, his right to require the prosecution to prove the crimes beyond a reasonable doubt, his right to confront witnesses, his right to compel witnesses, and his right to testify. (Doc. 16-2 at 188–89) Zink confirmed that he understood the facts from which the charges in the case arose and confirmed that he entered the plea because the plea served his best interests. (Doc. 16-2 at 189) Zink denied that any promises, threats, or coercion forced him to plead guilty. (Doc. 16-2 at 187) Zink denied that he suffered from any mental illness or consumed any drugs, alcohol, or medication which affected his ability to understand his guilty plea. (Doc. 16-2 at 187) Zink confirmed that he had discussed the case and possible defenses with his attorney and that he was satisfied with his attorney's representation. (Doc. 16-2 at 187) The trial judge determined that Zink "under[stood] and [was] freely, knowingly, and voluntarily entering [the] plea after expressing satisfaction with his attorney" and further determined that a factual basis supported the guilty plea. (Doc. 16-2 at 190) Zink signed a form to memorialize his guilty plea. (Doc. 16-2 at 204–09)

Zink moved to withdraw his plea (Doc. 16-2 at 217), and the trial court denied the motion as follows (Doc. 16-2 at 281–82):

> At the hearing on this matter the Defendant testified concerning matters relevant to his plea. At the hearing, the Defendant testified that he had been sentenced to life after a trial on the previous day in another case and felt he was in shock and was not thinking correctly when he entered his plea in the instant case. He testified that he felt he was in a depressed state of mind and did not have enough time to consider the consequences of his plea.
>
> At his plea hearing, the Defendant acknowledged that he believed the plea was in his best interest at the time he entered the plea. He indicated he had discussed the plea agreement with his attorney. He did not indicate he felt pressured or in the wrong state of mind to enter his plea. At the plea hearing, the Defendant

> indicated he was entering into the plea agreement as being in his best interest and that he had not been coerced into entering his plea. The Court fully explained, directly to Defendant, the rights he was giving up by not going to trial. The Court also explained, again directly to Defendant, the consequences of entering a guilty plea. Although he was facing the possibility of a life sentence in the instant case, his plea agreement called for a sentence of 20 years. His sentence was concurrent with the life sentence he had received in the case that he had gone to trial on the previous day.
>
> Based on the foregoing, the Court finds Defendant has failed to establish good and sufficient cause to set aside his previously entered plea and has failed to establish that a manifest injustice has occurred. Accordingly, it is ordered and adjudged that Defendant's Motion to Withdraw Plea of Guilty/No Contest is denied.

The state appellate court affirmed the order. (Doc. 16-3 at 34)

Because the suppression, *Brady*, and *Giglio* claims are not jurisdictional defects and Zink knowingly and voluntarily pleaded guilty, Zink waived sub-claim A and sub-claim B by pleading guilty in No. 2014-CF-2502. *McMann v. Richardson*, 397 U.S. 759, 772 (1970) ("[A] plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney."). *United States v. Davis*, 608 F.2d 555, 557 (5th Cir. 1979) ("Defendant Davis's argument that the Government permitted perjured testimony because two Government witnesses contradicted each other is foreclosed from consideration on appeal because his knowing guilty plea waived all nonjurisdictional defects. Perjury is not a jurisdictional defect.") (citations omitted); *Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000) ("*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern

that is absent when a defendant waives trial and pleads guilty."). Even if Zink did not waive sub-claim A and sub-claim B, the sub-claims are meritless for the reasons below.[1]

### No. 2014-CF-2605

#### Sub-claim A

Zink asserts that the trial court violated his constitutional rights by not suppressing his statements to police. (Doc. 1 at 5) He contends that he was under the influence of medication when police attempted to advise him of his rights and police coerced, tricked, and intimidated him to speak without fully advising him of those rights. (Docs. 1 at 5 and 2 at 1–9) The Respondent asserts that the claim is unexhausted because Zink raised the claim on direct appeal but failed to alert the state court to the federal nature of the claim. (Doc. 15 at 8, 21) Zink presented the claim as his third issue on direct appeal, referenced his "*Miranda* rights" eight times, and cited *Berghuis v. Thompkins*, 560 U.S. 370 (2010), which applies the legal standards in *Miranda v. Arizona*, 384 U.S. 436 (1966). (Doc. 16-7 at 19–23) Because Zink cited both *Berghuis* and *Miranda*, he fairly presented the federal nature of his claim to the state court. *Reese*, 541 U.S. at 32.

After an evidentiary hearing, the trial court orally denied Zink's claim as follows (Doc. 16-2 at 173–75):

> [Court:]          Okay. Alright. Well, *Miranda* was read. Based on the totality of the circumstances there was not an unequivocal assertion of the *Miranda* rights. What was stated was equivocal and I — it's possible that — you know, the defense has the argument that

---

[1] Zink raised sub-claim A and sub-claim B and challenged his convictions in No. 2014-CF-2502 in a state habeas petition (Doc. 16-3 at 165–78), and the post-conviction court dismissed the petition as procedurally barred. (Doc. 16-3 at 206–08) Because the Respondent fails to assert that the sub-claims are procedurally defaulted on federal habeas (Doc. 15 at 21, 26), the Respondent waives that defense. *Smith v. Sec'y, Fla. Dep't Corrs.*, 572 F.3d 1327, 1340 (11th Cir. 2009) (citing *McNair v. Campbell*, 416 F.3d 1291, 1306 (11th Cir. 2005)).

due to the nature of the case there should be heightened due process.

I think that due process should always be heightened and whether it's the person who has [been arrested] for the first time and this is the biggest thing that's ever happened to them or if it's the thirtieth time and it's a capital case or whatever the case might be, I think my job is to apply the case law to the circumstances [of] the case, regardless of the nature of the case.

And so applying the case law requires a view of the totality of the circumstances and whether or not there was a clear and unequivocal assertion of *Miranda* rights. And the case law — there's a lot of case law on the question because there's a lot of circumstances out there and various cases where the courts have had to look at what were the words that were said. And there's — some of those cases were referred to today.

Based upon the case law that was referred to and my understanding of the case law, as well, the statement that Mr. Zink made about whether he — I think he [ ] mentioned in the motion words to the effect of, "Maybe I should talk to a lawyer. I don't know." That — statements along that line have been held to be equivocal in nature. And officers are not required to stop.

And in this case it was Mr. Zink who kept going — kept discussing circumstances and discussing matters involving the case. And, you know, one of the cases that was mentioned today was that the — if the defendant says something about his rights and then continues on, well, then the officers are free to continue on with the questioning because it's the defendant who

has continued on with the discussion. And
that's what happened in this case, as well.

So under the totality of the circumstances,
I am going to deny the motion to suppress
and the statements will be admitted.

*Miranda*, 384 U.S. at 444, holds that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Before any questioning, the defendant must be informed that he has the right to remain silent, his statement can be used as evidence against him, and he has the right to have a retained or appointed attorney present. *Miranda*, 384 U.S. at 444–45. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. If the defendant indicates that either he wants to consult an attorney or that he does not want to participate in an interrogation, police may not question him. *Miranda*, 384 U.S. at 444–45.

"[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "[B]y virtue of the Due Process Clause 'certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned.'" *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993) (citations omitted), explains that a court looks to the totality of circumstances to determine whether a confession was voluntary:

> Under the due process approach, . . . courts look to the totality of circumstances to determine whether a confession was voluntary. Those potential circumstances include not only the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, physical condition, and mental health. They also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation.

"While each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct." *Connelly*, 479 U.S. at 163–64. "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Connelly*, 479 U.S. at 164.

### Advisement of Rights and Invocation of Right to a Lawyer

On federal habeas, Zink contends that the detectives violated his federal constitutional rights by not fully advising him of his constitutional rights, by not asking him if he understood his rights, and by interrogating him even though he told them, "Well, I said I should get a lawyer." (Doc. 2 at 2–10)

At the suppression hearing, Detective Schnable testified that he approached Zink outside with Detective Anderson. (Doc. 16-2 at 112) Zink told the detectives what might have happened with his granddaughter, and Detective Schnable advised Zink of his constitutional rights. (Doc. 16-2 at 112–13) At that point, the detectives planned to take Zink into custody. (Doc. 16-2 at 119–20) After advising Zink of his rights, Detective Schnable began to ask Zink whether he understood those rights, but Zink interrupted and started talking. (Doc. 16-2 at 113) Detective Schnable did not hear Zink mention a lawyer. (Doc. 16-2 at 114)

Detective Anderson testified that he and Detective Schnable approached Zink in the yard of his home. (Doc. 16-2 at 99, 104–05) A fence separated Zink and the detectives, and Zink asked, "Can I just holler at my girlfriend real quick?" (Doc. 16-2 at 132–33) Detective Anderson responded, "Yeah, well, we'll let you talk to her. We're not — we're not leaving so, I mean, we just want to talk to you." (Doc. 16-2 at 130, 138) After speaking with Zink for a few minutes, Detective Schnable read Zink his constitutional rights. (Doc. 16-2 at 100–01) After hearing his rights, Zink responded, "I don't know. I don't know if I need a lawyer." (Doc. 16-2 at 101)

A transcript of the audio-recorded interrogation showed that Zink told the detectives, "Well, I should get a lawyer. Well, I said I should get a lawyer." (Doc. 16-2 at 107) Detective Anderson testified that the transcript was not accurate. (Doc. 16-2 at 107) Zink submits the transcript of the interrogation to rebut the state court's determination that he told the detectives "words to the effect of, 'Maybe I should talk to a lawyer. I don't know.'" (Doc. 16-2 at 174) 28 U.S.C. § 2254(d)(2). *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015). At the suppression hearing the trial court admitted into evidence the audio-recorded interrogation (Doc. 16-2 at 102–03, 124, 126, 140–41), and Zink directed the trial court clerk to transmit the audio-recorded interrogation with the record on appeal. (Doc. 30-1 at 16)

This Court listened to the audio recording to review whether the trial court's determination was reasonable, and heard the discussion between the detectives and Zink as follows (Doc. 30, CD-1 at 2:00–4:30):

Detective Anderson:      We're detectives from the sheriff's office. Any idea what we're here to talk to you about?

| | |
|---|---|
| Zink: | Yes, sir. My son. I think he just called me. |
| Detective Anderson: | What's that about? |
| Zink: | Something about his daughter and myself. |
| Detective Anderson: | Okay. Alright. |
| | (inaudible) |
| Detective Schnable: | Well, we need you to come out and talk to us. Okay? |
| Zink: | Can I holler at Allie first? |
| Detective Anderson: | Yeah, well, we'll let you talk to her. We're not leaving. So, I mean. We just want to talk to you. |
| Zink: | Allie! Doggone woman. She suffers from manic depression. |
| Detective Anderson: | Uh-oh. She's in there cooking? It's about dinner time. |
| Zink: | Y'all going to take me to jail, then? |
| Detective Anderson: | Why are we going to take you to jail? |
| Zink: | I don't know. |
| | (inaudible) |
| Detective Schnable: | What happened between you and — |
| Zink: | I don't know. I take pain medication for my hip. |
| Detective Schnable: | Uh-huh. |
| Zink: | And I get out there when I've taken a lot of it. And I really, like I told |

|  | Martin, "Son, I apologize, I'm sorry if I have done anything out of the way. I get bits and pieces of memory of that day. And I'm very sorry and ashamed of myself for it." I told him on the phone — |
|---|---|
| Detective Schnable: | Well, because you're talking about something criminal that you may have done, let me read your rights first before we go any further. Okay? |
| Zink: | Yes, sir. |
| Detective Schnable: | You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer before and during any questioning. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. And you can decide at any time to exercise these rights and not answer any questions or make any statements. So what (pause) . . . |
| Zink: | Well, you said I should get a lawyer. I don't know. It's like I told him, I really don't remember. You know, bits and pieces. And I'm very ashamed of myself. |
| Detective Schnable: | What are you ashamed of yourself about? What did they say happened? |
| Zink: | He said something about [M.Z.] being around back, or something. I don't know. I really don't know. I don't remember. He said that he would come over and talk to me about it. |

14

After listening to the recorded interrogation, the trial court determined that Zink told the detectives "words to the effect of 'Maybe I should talk to a lawyer. I don't know.'" (Doc. 16-2 at 175) This Court listened to the recording and it is possible that Zink told the detectives, "Well, you said I should get a lawyer. I don't know." (Doc. 30, CD-1 at 4:00–4:05) It is a distinction without a difference because he then, without any prompting from the detectives, continued to talk about the issues that were being discussed. Because Zink's remark concerning a lawyer was not an unequivocal invocation of his right to counsel, the state court did not unreasonably conclude that the detectives appropriately continued interrogating Zink. *Davis v. United States*, 512 U.S. 452, 459 (1994) ("[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning."). The detectives were not required to clarify with Zink whether he invoked his right to counsel. *Davis*, 512 U.S. at 461–62 ("[W]e decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.").

Even though Zink did not expressly waive his constitutional rights, he impliedly waived those rights by incriminating himself instead of asking for a lawyer or invoking his right to silence. *Thompkins*, 560 U.S. at 384 ("The prosecution therefore does not need to show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence. . . . As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the

protection those rights afford.") (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). *United States v. Gonzalez*, 833 F.2d 1464, 1466 (11th Cir. 1987) ("Any ambiguity in Gonzalez's statement about her inability to retain counsel was resolved by her failure to request counsel or the presence of counsel after receiving the *Miranda* warning and proceeding with her confession. Gonzalez impliedly waived her right to counsel, and the district court properly admitted her confession.").

Before any further questioning by the detectives and immediately after his remark concerning a lawyer, Zink spontaneously told the detectives, "It's like I told him, I don't, I really don't remember. You know bits and pieces and, and I'm very ashamed of myself." (Doc. 30, CD-1 at 4:05–15) Because Zink initiated further conversation, the state court did not unreasonably conclude that the detectives could further interrogate Zink. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) ("[A]n accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."). *Moore v. Dugger*, 856 F.2d 129, 133–34 (11th Cir. 1988) ("In this case, however, petitioner was the one who voluntarily elected to continue the dialogue; there is no dispute that he had previously been given *Miranda* warnings, and he acknowledged that he was aware of his right to counsel, but he clearly chose to withdraw his request for an attorney.").

### Medication

Zink further contends that the detectives violated his federal constitutional rights by interrogating him even though he was under the influence of medication. (Doc. 2 at 2–10) Detective Anderson testified that Zink mentioned that something had happened between him

and his granddaughter while he was taking pain medication and explained that he took the medication for his hip. (Doc. 16-2 at 99–100) Detective Schnable understood this statement to mean that Zink used to take the medication. (Doc. 16-2 at 114–15) Both detectives testified that Zink did not appear intoxicated. (Doc. 16-2 at 105–06, 114–15)

Immediately after Zink told the detectives, "I take pain medication for my hip," Zink remarked, "And I get out there, you know, when I've taken a lot of it. . . . And I really — like I told Martin, I said, 'Son, I apologize if I've done anything out of the way.' I get bits and pieces of memory on that day and I'm very sorry and ashamed [of] myself." (Doc. 16-2 at 108–09) In context, Zink told the detectives that he did not clearly remember what happened between him and his granddaughter because he had taken pain medication.[2]

This Court listened to the audio-recorded interview and heard Zink coherently speak with the detectives and logically respond to their questions. (Doc. 30, CD-1) Because the record refutes Zink's claim that he was so heavily medicated during the interrogation that he did not understand his constitutional rights, the state court did not unreasonably deny the claim. *United States v. Martin*, 434 F.2d 275, 278 (5th Cir. 1970) ("'The fact that the defendant was intoxicated when he confessed is immaterial if he had sufficient mental capacity at the time to know what he was saying and to have voluntarily intended it.'") (citation omitted).

**Invocation of Right to Silence**

Lastly, during the interrogation, Zink asked the detectives, "Could I speak no more?" (Docs. 16-2 at 134 and 30, CD-1 at 25:50–25:55) Detective Schnable responded as follows (Doc. 30, CD-1 at 25:50–26:20):

---

[2] Before the detectives transported Zink to jail, Zink told the detectives that he took heart medication, Methadone, and stomach medication (Doc. 30, CD-1 at 20:55–21:05, 31:55–32:25) and suffered from pain in his shoulders. (Doc. 30, CD-1 at 41:05–41:15)

| | |
|---|---|
| Zink: | Could I not speak no more now? I mean if ya'll going do me in. |
| Detective Schnable: | That's your choice. Yes, sir. |
| Detective Anderson: | Okay. Here you go, boss. This is so we can take that computer that you were talking about. It says that you, and you write your name, hereby give consent (inaudible) — |
| Zink: | Do you mind if I read it? |
| Detective Anderson: | Absolutely. Yeah, I was just trying to help you out by reading it to you. |

The detectives continued to discuss with Zink (1) whether Zink possessed a weapon or kept a weapon in his home, (3) whether the court would grant Zink bail, (4) what Zink would need to bring to the jail, including the names of his medication and his identification, (5) the metal pins in Zink's shoulder so that the detectives would carefully handcuff Zink, and (6) whether Zink could speak with his girlfriend before he went to jail. (Doc. 30, CD-1 at 26:05–45:20) Questions concerning these matters were "normally attendant with arrest and custody," were not reasonably likely to elicit an incriminating response and did not violate *Miranda*. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). *Everett v. Sec'y, Fla. Dep't Corrs.*, 779 F.3d 1212, 1244–45 (11th Cir. 2015).

After he invoked his right to silence, the detectives also asked Zink (1) whether he would sign a consent form to allow the detectives seize a computer containing child pornography (Doc. 30, CD-1 at 26:05–28:10), (2) whether he possessed any videotapes that contained child pornography (Doc. 30, CD-1 at 26:40–45), (3) whether only one computer in his home contained child pornography (Doc. 30, CD-1 at 26:40–45), (4) whether he kept the camera that he used to take photographs of his granddaughter, M.Z. (Doc. 30, CD-1 at

31:10–20), and (5) whether he had sexually abused M.Z. more than once. (Doc. 30, CD-1 at 41:55–42:30)

Even though these questions were reasonably likely to elicit an incriminating response, the prosecutor redacted these questions and Zink's responses from the audio recording played for the jury. (Docs. 16-5 at 151–71 and 16-6 at 41–50) At trial, Zink faced charges only for sexual abuse of M.R., his daughter. (Doc. 16-4 at 36–37 and 16-5 at 32) In a separate case, the prosecutor charged Zink with sexual abuse of M.Z., his granddaughter, and possession of child pornography (Doc. 16-2 at 56–68), and Zink pleaded guilty to those charges. (Doc. 16-2 at 204–09) Because the prosecutor did not introduce into evidence the questions and Zink's responses concerning these other collateral crimes, the state court did not unreasonably apply *Miranda*. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial.") (citation omitted); *United States v. Blue*, 384 U.S. 251, 255 (1966) ("Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial.") (citations and footnote omitted).

### Totality of Circumstances

Lastly, as to all of the incriminating statements that were introduced at the trial, the state court appropriately reviewed the totality of the circumstances to conclude that Zink's confession was voluntary. *Williams*, 507 U.S. at 693–94. Because the detectives advised Zink of his constitutional rights, interrogated him in front of his home, did not handcuff or restrain

19

him during the interrogation, observed that Zink did not appear intoxicated during the interrogation, police did not coerce Zink's confession. *Colorado v. Spring*, 479 U.S. 564, 573–74 (1987) ("There is no doubt that Spring's decision to waive his Fifth Amendment privilege was voluntary. He alleges no 'coercion of a confession by physical violence or other deliberate means calculated to break [his] will,' and the trial court found none.") (citation omitted); *Connelly*, 479 U.S. at 164 ("[A]s interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus. But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'") (citation omitted).

Sub-claim A is **DENIED**.

**Sub-claim B**

Zink asserts that that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) by playing at trial a redacted recording of his interview with the detectives. (Doc. 2 at 9–10) He contends that the redacted portion of the recording showed that the detectives failed to advise him his constitutional rights and that he was unable to waive those rights because of his "incoherent state of mind." (Doc. 2 at 9)

### *Brady* Claim

The post-conviction court denied the *Brady* claim as follows (Doc. 16-7 at 176) (state court record citations omitted)[3]:

> [T]he Defendant asserts that the State committed a *Brady*
> violation in redacting portions of the audio recording of the

---

[3] When Zink filed his federal petition, his appeal of the post-conviction court's denial of the claim was pending. The state appellate court affirmed without a written opinion. *Zink v. State*, 289 So. 3d 882 (Fla. 2d DCA 2020).

Defendant's interview by Detectives Robert Anderson and Barry Schnable.

It is apparent that trial counsel had access to a transcript of the interview at the time of the suppression hearing. The record reflects that certain portions of the Defendant's interview were redacted at trial as they contained a discussion of misconduct that was not charged in the instant case but was the subject of other charges pending against the Defendant. The above indicates that trial counsel was provided and aware of the entire recording and transcript of the Defendant's interview; however, some was redacted with trial counsel's full knowledge for the purposes of Defendant's trial. The Defendant would have been prejudiced by the inclusion of the redacted portions of the interview at trial. The Defendant's claim is refuted by the record. Accordingly, [the] claim is denied.

At the suppression hearing, the prosecutor introduced into evidence a copy of the

audio recording of Zink's statement to police as follows (Doc. 16-4 at 138–39):

| [Prosecutor:] | . . . Your Honor, at this time, the State is asking to move in State's Exhibit 1 which is his statement. |
|---|---|
| [Court:] | Okay. |
| [Trial counsel:] | I haven't listened to this, but I'm taking [the prosecutor's] word that this is just the statement that's an exact copy of [that] which was authenticated by the officer. |
| [Court:] | Okay. That's Exhibit Number 1? |
| [Prosecutor:] | It is, Your Honor — State's Exhibit 1. |
| [Court:] | Okay. Then it will be admitted. |

(Whereupon State's Exhibit Number 1 was received into evidence.)

| [Prosecutor:] | And, Your Honor, for the record, these statements have been available to the defense if they had wanted a copy of it. It was listed in discovery. |
|---|---|

| [Court:] | Okay. And, as I understand it, this is the entire statement? |
| [Prosecutor:] | It is, Your Honor, and I would ask that we stop shortly after he makes his alleged request for an attorney because I don't think the rest has any bearing on it. |

During the hearing, trial counsel used a transcript of Zink's statement to cross-examine both detectives. (Doc. 16-4 at 118–19, 133–35, 142–43, 147–50)

At trial, the prosecutor asked the defense to stipulate to the admission of a redacted copy of Zink's statement to police. (Doc. 16-5 at 151–52) Trial counsel agreed to the redaction of statements concerning uncharged criminal conduct but asked that the detective's *Miranda* warning and Zink's response remain. (Doc. 16-5 at 153–56) Trial counsel provided the trial judge with a copy of the transcript and highlighted the *Miranda* warning and Zink's response. (Doc. 16-5 at 159–72) The trial judge denied trial counsel's request because trial counsel presented the request on the morning of trial, Zink had demanded a speedy trial, and no time remained for the prosecutor to edit the redacted copy. (Doc. 16-5 at 154–55, 170–71) Instead, the trial judge allowed trial counsel to ask the detectives about the *Miranda* warning and Zink's response. (Doc. 16-5 at 171)

The prosecutor played at trial the redacted copy of Zink's statement (Doc. 16-6 at 38–50), and trial counsel asked the detectives on cross-examination about the *Miranda* warning and Zink's response. (Doc. 16-6 at 28–30, 82–88, 94–95) Detective Schnable admitted on cross-examination that (1) he failed to comply with a policy at the sheriff's office requiring him to ask Zink if he waived his rights, (2) the recording reflected that Zink asked something about a lawyer just after hearing his rights, and (3) the detective interrogated Zink without clarifying what Zink said about a lawyer. (Doc. 16-6 at 418–23, 429–30)

22

*Brady*, 373 U.S. at 87, holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "To establish a *Brady* violation, a defendant must prove three essential elements: (1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant." *Rimmer v. Sec'y, Fla. Dep't Corrs.*, 876 F.3d 1039, 1054 (11th Cir. 2017). To establish prejudice, the defendant must show that the suppressed evidence was material, or "there is a reasonable probability that, had the suppressed evidence been disclosed, the result of the proceeding would have been different." *Rimmer*, 876 F.3d at 1054.

Because the prosecutor provided the defense an opportunity to obtain a copy of the recorded statement, the prosecutor did not violate *Brady*. *Parker v. Allen*, 565 F.3d 1258, 1277 (11th Cir. 2009) ("[T]here is no suppression if the defendant knew of the information or had equal access to obtaining it."); *Maharaj v. Sec'y, Dep't Corrs.*, 432 F.3d 1292, 1315 (11th Cir. 2005) ("Our case law is clear that '[w]here defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.'") (citation omitted).

Also, the record shows that the prosecutor did not suppress Zink's recorded statement but rather redacted at trial the recorded statement to remove statements concerning uncharged criminal conduct. (Doc. 16-5 at 151–71) Trial counsel knew about the statements concerning uncharged criminal conduct, agreed with the redaction of those statements, but objected to the redaction of other statements concerning the detective's

*Miranda* warning. Because trial counsel knew the contents of the redacted statements, the record refutes the *Brady* claim and the state court did not unreasonably deny the claim. *United States v. Agurs*, 427 U.S. 97, 103 (1976) ("The rule of *Brady v. Maryland*, 373 U.S. 83 (1963), arguably applies in three quite different situations. Each involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense.").

### *Giglio* Claim

Zink asserted in both his post-conviction petition (Doc. 16-7 at 129–30) and his brief on appeal (Doc. 16-8 at 182–83) that the prosecutor violated *Giglio* by playing the redacted recording at trial. Even though neither the post-conviction court (Doc. 16-7 at 176) nor the state appellate court, *Zink*, 289 So. 3d at 882, expressly ruled on the *Giglio* claim, the Court presumes that the state court denied the claim on the merits. *Johnson v. Williams*, 568 U.S. 289, 293 (2013). To demonstrate a violation of *Giglio*, a petitioner must show "'. . . [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material.'" *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 949 (11th Cir. 2016) (quoting *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1277 (11th Cir. 2005)). "A falsehood is material if there is any reasonable likelihood that it could have affected the result." *Raleigh*, 827 F.3d at 949 (quotation marks and citation omitted).

The record shows that the prosecutor redacted at trial the recorded statement to remove statements concerning uncharged criminal conduct. (Doc. 16-5 at 151–71) When the prosecutor published the recorded statement to the jury, the trial judge advised the jury that the recorded statement was edited (Doc. 16-6 at 372):

[Court:]   So, ladies and gentlemen, members of the jury, you are about to listen to an audio recording. The court instructs you that the recording has been edited to eliminate irrelevant portions that would not add to your understanding of the case. The fact that the recording has been edited should not concern you in any way, and you must — and must not impact the way you listen to and consider this evidence.

The defense cross-examined Detective Schnable who admitted that (1) he failed to comply with a policy at the sheriff's office requiring him to ask Zink if he waived his rights, (2) Zink asked something about a lawyer just after hearing his rights, and (3) the detective interrogated Zink without clarifying what Zink said about a lawyer. (Doc. 16-6 at 418–23, 429–30) In closing argument, the prosecutor told the jury that Detective Schnable read Zink his *Miranda* rights and did not ask Zink whether he waived those rights because Zink interrupted and started talking. (Doc. 16-6 at 161) The prosecutor did not oppose allowing the defense to introduce its own redacted statement with the *Miranda* warning and Zink's response during the defense's case-in-chief (Doc. 16-6 at 307), but the defense was not prepared to do so.

Because Zink failed to show that the prosecutor knowingly and deliberately presented false evidence to the jury, the state court did not unreasonably apply *Giglio*. *Raleigh*, 827 F.3d at 950 ("In cases involving the alleged presentation of false evidence, the Supreme Court has held that it is the 'deliberate deception of a court and jurors by the presentation of known false evidence' that is 'incompatible with rudimentary demands of justice.'") (citation omitted). *Tejada v. Dugger*, 941 F.2d 1551, 1557 (11th Cir. 1991) ("[A]t trial Tejada's counsel brought out on cross-examination the inconsistency between Ortiz's testimony and his earlier sworn

statement. So, because the jury was made aware of the inconsistency, the 'false' testimony could not affect the judgment of the jury.").[4]

Sub-claim B is **DENIED**.

Accordingly, it is **ORDERED** that Zink's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Zink and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Zink neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on January 27, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

---

[4] Even assuming that the state court inadvertently overlooked the *Giglio* claim and *de novo* review applies, the claim is without merit. *Thompkins*, 560 U.S. at 390.